# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN RAY WILKERSON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-09-2842 |
| WARDEN, *et al.* | * | |
| Defendants | * | |

## MEMORANDUM

Pending are defendants' motions to dismiss or for summary judgment. Papers No. 12 and 26. Plaintiff opposes both motions. Papers No. 20 and 33. In addition to the merits of the complaint, plaintiff alleges legal papers concerning this case were confiscated from his cell during the pendency of this case. Paper No. 17. Counsel responded to the allegation. Paper No. 27. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2009).

### Confiscation of Legal Materials

Plaintiff alleged during the pendency of this case that correctional staff removed legal materials from his cell. Paper No. 17. Specifically, he alleged his cell was searched and the response to summary judgment he was working on was removed from his cell on March 20, 2010. *Id.* Plaintiff claims officers told him he could not have legal papers while on lock-up. *Id.* He further states that his cell was video taped after the search and he did not realize until he cleaned his cell up that his paper work was missing. *Id.* He requested an extension of time, which was granted, and another copy of defendants' motion for summary judgment.

Defendants state that the only thing removed from plaintiff's cell was a cardboard box which is not permitted as it presents a fire hazard. Paper No. 27. Defendants deny that any legal

papers were removed from plaintiff's cell. Plaintiff fails to refute the facts as alleged by defendants and managed to file a response to the first motion for summary judgment filed by medical defendants on April 1, 2010. Paper No. 20. The court concludes that any allegation implied by plaintiff that his legal materials were removed from his possession in an effort to retaliate against him is unfounded.

**Background**

Plaintiff claims on October 13, 2009, Officer Wheatley and Sergeant Drummond came to his prison cell to search it. Paper No. 3. Wheatley asked plaintiff to turn around so he could be handcuffed from the back. Plaintiff responded that he had a medical order to be handcuffed only in the front due to a medical condition involving his right arm. *Id*. Plaintiff states the officers requested proof in the form of medical paperwork, but when he tried to retrieve the paperwork,Wheatley would not allow him to retrieve it. *Id*. Plaintiff alleges that Wheatley then allowed him to retrieve the paper work from his cell after some discussion, but then refused to read it.[1] *Id*.

Plaintiff alleges he explained to Drummond that there was a medical order written by Dr. McDonald stating he should only be cuffed in front. He claims Drummond said she would check on the order and left the area. Plaintiff states he told Drummond he was in pain with his hands cuffed behind his back, but she laughed in response and went back to the control center.

Plaintiff states they started the cell search and Wheatley asked, "who's locker is the first one?" and "who's stuff is on top?" Paper No. 3 at p. 4. Plaintiff responded that the property referred to was his and Wheatley allegedly said that "if these stamps come up missing don't be

---

[1] Plaintiff's version of events differs in the Adminsitrative Remedy Procedure (ARP) complaint filed regarding the incident. There, he states he told Wheatley he did not have the order and asked if medical could be called. Paper No. 11 at Ex. 1. Plaintiff further claimed that Wheatley refused to call medical and threatened to mace him if he did not allow Wheatley to cuff him from behind. *Id*.

surprised." *Id*. Plaintiff claims he kept telling Wheatley and Hall his arm was hurting the entire time his cell was being searched, but they laughed in response.

Plaintiff claims Drummond returned to the area and asked him why he couldn't be handcuffed in the back. Plaintiff states he explained to her that his arm was injured in a previous assault by a correctional officer when a feed-up slot was slammed on it. [2] After the cell search was finished, plaintiff was escorted to the dayroom where the handcuffs were removed. Paper No. 3 at p. 4. At that time plaintiff asked for medical attention because he could not feel his right fingertips.

Plaintiff was then handcuffed again and taken out of the dayroom to the housing unit clerk's office where he told the officers he was experiencing chest pains and needed nitroglycerin pills. *Id*. at p. 5. Correctional staff informed plaintiff he would be receiving an institutional infraction and going on lock-up. He was escorted to medical where he was treated for chest pains and given an EKG as well as nitroglycerin pills by Nurse Quinton.[3]

After he was treated, Lt. Cavins asked plaintiff if there was a medical order for him to be cuffed in front and plaintiff replied there was an order due to an injury he sustained during an assault. Plaintiff alleges Cavins asked Quinton to check the computer for a cuff-in-front order, but she could not find one. Plaintiff was then sent back to pick up his property and report to lock-up.

Plaintiff claims he was examined several days later after filing a sick call slip because his fingers and arms were "swollen to twice their normal size." Paper No. 3 at p. 5. Plaintiff states Nurse Melissa told him there was already a cuff –in-front order in the computer and another order was put in by the doctor at ECI after plaintiff showed him the paper work. *Id*. at p. 6.

---

[2] Plaintiff states the case was settled. *See Wilkerson v. Sacchet*, Civil Action No. L-03-3219 (D. Md).

[3] Nurse Quinton's name is misspelled as Quenting in the complaint.

Plaintiff claimed at the time the instant complaint was filed, he was experiencing pain in his right arm, hand and neck. He further claims he has been requesting medical attention but has not been seen.

Correctional defendants state that when plaintiff's cell was searched Wheatley and Hall ordered plaintiff to turn around so that he could be handcuffed, but plaintiff stated he had a medical order to be cuffed in front. Paper No. 26 at Ex. A, B, and D, pp. 9 and 11. Plaintiff was permitted ten to fifteen minutes to search his cell for the medical order, but he could not locate it. *Id*. Wheatley and Hall then contacted Sergeant Drummond who contacted the medical department to ask if plaintiff had a cuff-in-front order in his file. *Id*. at Ex. C. An order could not be located; therefore, plaintiff was cuffed in the back, per the normal practice. *Id*. at Ex. B.

Medical defendants state that on September 24, 2009, plaintiff complained of chest pain that radiated to his hands. He was evaluated, and given nitroglycerin tablets for the pain and prednisone for any swelling in his hands. *Id*. at Ex. A and Ex. C, p. 6. On October 6, 2006, plaintiff complained his left hand felt numb for six weeks because handcuffs had cut into his wrist, causing him to lose feeling in his fingertips. He further explained that his entire left hand felt numb and when he made a fist with that hand, it felt as though something was torn in it. Examination of plaintiff's hand did not reveal any deformities and the grasp in both hands were equal. Based on that examination, the nurse prescribed another course of prednisone and a follow up examination with a physician's assistant. *Id*.at Ex. A and Ex. C, p. 7.

On October 13, 2009, the day plaintiff's cell was searched, Quinton received a phone call from security staff inquiring whether plaintiff had a cuff-in-front order in his medical record. Quinton checked the record and saw no orders written since plaintiff's transfer from MCTC. Plaintiff was later escorted to the medical unit with complaints of chest pain following being

handcuffed behind his back. Paper No. 12 at Ex. C, p. 7. Plaintiff was given an EKG and no changes were noted. *Id*.

On October 16, 2009, plaintiff was evaluated in the chronic care clinic for chest pains. At that time it was noted that plaintiff had a history of "brachial plexus injury," an injury to nerves that send signals to the arms, shoulders and hands. Paper No. 12 at Ex. A and B. Although no swelling or weakness was noted in plaintiff's hands, a cuff-in-front order was written. *Id*. at Ex. C, p. 10. On October 28, 2009, plaintiff's arm pain was again evaluated and the cuff-in-front order and a prescription for aspirin were renewed. *Id*. at pp. 12 and14.

Plaintiff was evaluated and treated for chest pain on November 1, 2009, when it was noted the pain was controlled via nitroglycerin pills. Plaintiff was told to avoid heavy lifting. *Id*. at Ex. C, pp. 15—16. On November 25, 2009, plaintiff was seen by medical staff regarding pain in his right arm. Plaintiff reported that he had difficulty holding a cup in his hand and was referred for examination by a physician's assistant. *Id*. at p. 19. Although plaintiff complained about arm pain again on November 6 and 16, 2009, he did not mention arm pain on December 1, 2009, when he was admitted to the infirmary for chest pains. *Id*. at pp. 20—24. Plaintiff was released from the infirmary on December 2, 2009, when his EKG was noted as unchanged and his cardiac evaluation as well as a CT scan were unremarkable. Plaintiff remained enrolled in the chronic care unit to monitor his cardiac problems. *Id*. at Ex. A. On December 4, 2009, plaintiff was seen again for chest pain, but his examination was normal. Plaintiff was told to continue medications and return if symptoms resurfaced.

Plaintiff submitted a sick call request on December 9, 2009, complaining of pain in his right arm and requesting physical therapy and pain medication. On December 21, 2009, Nurse Practitioner Morthole examined plaintiff's right arm. The exam revealed: (1) no deformity,

edema, erythema (redness), or effusion (accumulation of fluid); (2) equal strength when compared to the left arm; and (3) the size of his right forearm and wrist were equal to his left arm. In addition, Morthole noted that plaintiff was able to put his right arm behind his back and his neck, but when asked to do certain exercises, he would sometimes hold his right arm higher and at other times, lower. Morthole also observed that at times plaintiff acted as if he could not move his right arm and held it limp but, at other times, when he used his right arm, it appeared to be normal. Morthole noted that the physical examination of plaintiff was inconsistent, therefore, she included malingering in the list of possible diagnoses.

Despite the inconsistencies Morthole ordered an x-ray of plaintiff's thoracic spine to determine whether he suffers from scoliosis, an abnormal curvature of the spine. Paper No. 12 at Ex. A. Plaintiff stated that he had an injury to his right arm that led to an 85% loss of function and that he had court-ordered restrictions, but no documentation was found in his chart. In addition, there were no notations of neurological deficits or musculoskeletal problems. Plaintiff also claimed that he had had neurological testing on his arm, but there were no records of testing or documentation that plaintiff actually had a brachial plexus injury. *Id*. Ex. A.

**Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

<u>Medical Claim</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical

7

need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839- 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000), *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Defendants do not dispute that a medical "cuff-in-front" order was written on September 8, 2009, by Kevin McDonald, a physician's assistant at Maryland Correctional Training Center (MCTC). Paper No. 12 at Ex. C, p. 3. Plaintiff was transferred from MCTC to ECI on

8

September 10, 2009. Medical orders written at one institution are reviewed by medical staff at the receiving institution, where they are renewed at the discretion of the staff. Plaintiff's cuff-in-front order was not renewed when plaintiff arrived at ECI, but his complaints of arm pain were not ignored. Each of his complaints were taken seriously and investigated by medical staff. At the time of the incident there was no apparent medical reason for plaintiff to have a cuff-in-front order. Although the examination of plaintiff at a later date gave medical staff cause to believe he was malingering, a cuff-in-front order was nonetheless written tests were ordered. Thus, medical defendants did not know at the time his cell was searched that plaintiff was suffering from a condition that required a cuff-in-front order and were, therefore, not deliberately indifferent to a serious medical need.

Correctional defendants relied upon the expertise and judgment of the medical staff regarding whether plaintiff's physical condition required a cuff-in-front order. The undisputed facts are that correctional staff called to confirm whether plaintiff's request to be handcuffed in the front was medically necessary. Paper No. 1, 26 and 33. Because the order was not renewed after plaintiff's transfer, there was no order in place at the time plaintiff's cell was searched. Pursuant to policy, if an inmate has a cuff-in-front order a copy of the order is sent to the housing unit and one is provided to the inmate. In the event neither copy can be located, the medical unit is consulted by correctional staff. Paper No. 26 at Ex. C. Those precautions were taken in the instant case and no order was located. Thus, correctional defendants were not deliberately indifferent to plaintiff's serious medical need when he was handcuffed behind his back.

<u>Excessive Force Claim</u>

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

9

sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

Correctional defendants state that handcuffing inmates behind their back during a cell search is a matter of regular practice. Paper No. 26. Plaintiff disputes that it is a part of the protocol and points out that it is not a part of the written procedures in place. Paper No. 33. The fact that handcuffing inmates behind their backs is not included in a written protocol does not mean the practice is not one that is approved or ordinarily used. It is clear in the instant case that precautions were taken before handcuffs were applied to plaintiff to ascertain whether placing his hands behind his back was medically contraindicated. The information received by correctional staff was that there was no medical reason prohibiting plaintiff from being cuffed behind his back. Thus, the use of handcuffs in the instant case was not malicious or sadistic.

Plaintiff claims that the 2003 injury resulted in a 5% loss of function in his right arm, and was the subject of a lawsuit that resulted in a settlement requiring, inter alia, a cuff-in-front order. Paper No. 20. To the extent the settlement agreement included a cuff-in-front order, it was not made a part of the court's record and remained an agreement between the parties. *See*

*Wilkerson v. Sacchet*, Civil Action L-03-3219 (D. Md.). There is no indication, either in the court's file or in the papers filed by plaintiff in the instant case, that the cuff-in-front requirement was permanent and not subject to reassessment based upon plaintiff's ongoing medical condtion.[4] Thus, the allegation that the absence of a cuff-in-front order violates a court order is inaccurate.

## Conclusion

The court finds that defendants are entitled to summary judgment in their favor on all claims raised by plaintiff. A separate order follows.


July 20, 2010                              _____/s_____
Date                                       J. Frederick Motz
                                           United States District Judge

---

[4] Plaintiff was releiased on parole after 2003 judgment and returned on parole violation in 2009.   Paper No. 33 at p. 13.